**Candyce ANDERSON, Respondent,**

v.

**DEAN WITTER REYNOLDS,
INC., Appellant.**

**No. C0–89–768.**

Court of Appeals of Minnesota.

Dec. 26, 1989.

Review Denied March 8, 1990.

Daniel D. Reisman, Minneapolis, for appellant.

Janie S. Mayeron, Kathryn Walker, Joy Waldera, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondent.

Heard, considered and decided by GARDEBRING, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Dean Witter Reynolds, Inc. (Dean Witter) appeals from an order denying its motion to compel arbitration and stay litigation pursuant to the Minnesota Uniform Arbitration Act, Minn.Stat. § 572.26, subd. 1(1) (1988) and the Federal Arbitration Act (FAA), 9 U.S.C. § 15(a)(1)(A) & (B) (1988). We affirm.

## FACTS

Respondent Candyce Anderson was employed as an account executive with Dean Witter from June 1984 to May 7, 1987. As part of the hiring process, Anderson was required to sign an employment agreement which provided in part:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration before either the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc. or the American Arbitration Association, in accordance with their respective rules, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Anderson was also required to sign and file with the National Association of Securities Dealers (NASD) a Uniform Application for Securities Administration Form which contained a clause whereby she agreed

> to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register, as indicated [herein].

On August 5, 1987, Anderson filed a charge of discrimination against Dean Witter with the Equal Employment Opportunity Commission (EEOC) and the Minnesota Department of Human Rights (Department). EEOC issued a determination of no

probable cause to proceed and the Department dismissed Anderson's charge.

Anderson then commenced this action alleging sexual harassment and sex discrimination in employment practices under the Minnesota Human Rights Act, Minn. Stat. § 363.03, subd. 1(2)(b) & (c) (1988). Citing both the FAA and the Minnesota Uniform Arbitration Act, Dean Witter moved to compel arbitration and stay litigation based upon the arbitration provisions in the various documents Anderson signed when hired. This appeal followed denial of that motion.

## ISSUE

Did the trial court err in denying Dean Witter's motion to compel arbitration?

## ANALYSIS

In denying Dean Witter's motion to stay litigation, the trial court relied on *Swenson v. Management Recruiters International, Inc.*, 858 F.2d 1304 (8th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989). In *Swenson,* the employee sued her former employer for sex discrimination under the Minnesota Human Rights Act. *Id.* at 1304. She had also signed the employer's arbitration agreement. *Id.* at 1305 n. 2. The Eighth Circuit Court of Appeals reversed the district court's order staying the suit pending arbitration of all issues under the FAA, stating:

We conclude that Congress has articulated an intent through the text and legislative history of Title VII to preclude waiver of judicial remedies for violation of both federal Title VII rights and parallel state statutory rights, thereby exempting state statutes from the provisions of the Federal Arbitration Act. We emphasize that we reach this holding based upon the legislative history and congressional intent manifested by Congress in passing Title VII.

*Id.* at 1309.

We also find *Swenson* persuasive. It is grounded in facts similar to those presented here, and has been relied on in other circuits. *See, e.g., Nicholson v. CPC Inter-*

*national, Inc.*, 877 F.2d 221, 230 (3rd Cir. 1989); *Utley v. Goldman Sachs & Co.*, 883 F.2d 184, 187 (1st Cir.1989) (employee not required to arbitrate federal civil rights claims prior to judicial hearing even though she had signed employer's arbitration agreement).

While *Swenson* dealt specifically with arbitration under the FAA, the same principles favor applying the *Swenson* holding to cases involving arbitration under the Minnesota Uniform Arbitration Act. In addition, we see no reason to have a different rule for state judicial remedies available under the Minnesota Human Rights Act when that statute appears to be modeled after Title VII and the purposes of the two statutes are the same. *See Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 441 (Minn.1983); *Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978). Thus, we believe the holding in *Swenson* is dispositive to the issues presented here.

*Swenson* relied heavily on *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Alexander,* the Supreme Court held an employee's statutory right to trial *de novo* under Title VII is not foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective bargaining agreement. *Id.* at 59–60, 94 S.Ct. at 1025–26. The Court stated, "[W]e think it clear that there can be no prospective waiver of an employee's rights under Title VII." *Id.* at 51, 94 S.Ct. at 1021; *see also Swenson*, 858 F.2d at 1305. Under *Alexander,* an employer may not require that an employee's discrimination claim be submitted to final arbitration pursuant to a predispute agreement. *Id.* at 59–60, 94 S.Ct. at 1025–26.

Dean Witter nevertheless argues *Alexander* and *Swenson* cannot be read to deny arbitration in light of recent Supreme Court decisions favoring arbitration. Over the last five years, the Supreme Court has compelled arbitration of many disputes governed by the FAA, whether the disputes involved claims arising under state or federal statutes. *See, e.g., Rodriguez de Quijas v. Shearson/American Express,*

*Inc.,* — U.S. —, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (1933 Securities Act claims must be arbitrated pursuant to agreement); *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (California Labor Code claim for wages held arbitrable, despite state statute invalidating arbitration agreements in wage-collection cases); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (1934 Securities Exchange Act claims and RICO claims held arbitrable); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Anti–Trust Act claims held arbitrable); *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (California Franchise Investment Law claims held arbitrable despite non-waiver provision); *cf. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* — U.S. —, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (arbitration not compelled where valid choice of law provision made state law applicable and FAA did not preempt state arbitration law).

However, the cited cases do not involve a cause of action under Title VII or a parallel state antidiscrimination law. Nor can those cases be read to hold arbitration must be the forum of *final* resolution or that judicial remedies can be *completely* waived by an employee.

Dean Witter further asserts legislative history of Title VII does not show congressional intent to prohibit final resolution of discrimination claims in a nonjudicial, arbitral forum. We disagree. On this point, the Supreme Court states:

> Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, *it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.*

*Mitsubishi,* 473 U.S. at 627–28, 105 S.Ct. at 3354–55 (citations omitted) (emphasis added). Title VII and the Minnesota Human Rights Act are two such statutes.

In passing Title VII, "Congress indicated that it considered the policy against discrimination to be of the 'highest priority.'" *Alexander,* 415 U.S. at 47, 94 S.Ct. at 1019 (citations omitted). Relying on this congressional intent, the *Alexander* court concluded an employee cannot prospectively waive her right to try a discrimination claim in the judicial forum. *Id.* at 51, 94 S.Ct. at 1021. *Swenson* went one step further in examining the congressional intent regarding Title VII:

> The legislative history of Title VII evinces a congressional intent to allow individuals to pursue independently one's rights under other applicable state and federal statutes.

*Swenson,* 858 F.2d at 1308 (footnote omitted). This independent pursuit of statutory rights allows an individual or aggrieved employee to completely avoid a predispute agreement to use the arbitral forum.

## DECISION

The trial court did not err in concluding, as a matter of law, that neither the FAA nor the Minnesota Uniform Arbitration Act require arbitration of sex discrimination claims brought under the Minnesota Human Rights Act. The employer's arbitration agreement, signed by the employee prior to the dispute, did not foreclose her statutory remedies.

Affirmed.

RANDALL, Judge, dissenting.

I respectfully dissent. I would have found that the unambiguous employment agreement respondent signed governs the resolution of this controversy. The compulsory arbitration process can provide a speedy and fair hearing on the merits of the claim.